UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. 4:21-cr-00014-CEA-CHS |
| v. ) | |
| ) | |
| JASON MICHAEL NEWSOM ) | |
| ) | |

**REPORT AND RECOMMENDATION**

**I.    Introduction**

This matter is before the Court upon Defendant Jason Michael Newsom's Motion to Suppress Statements [Doc. 74] which the District Court has referred to this Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B)-(C). On April 19, 2021, Bureau of Alcohol, Tobacco, Firearms and Explosives Special Agent Stephen Gordy interviewed Defendant in jail.[1] Defendant seeks to suppress statements made to Agent Gordy during that interview. For the reasons stated herein, it is **RECOMMENDED** that the motion to suppress be **DENIED**.

**II.    Facts**

On February 3, 2021, Special Agent Gordy interviewed Defendant while Defendant was detained at a jail [Doc. 76 at 2]. The interview was both audio and video recorded, [*id.* at 3], and the Government filed a transcript of the interview [Doc. 76-3]. The transcript of the interview, in pertinent part, reads:

> SG:[2] Well, look, look, y-y-you wanna talk and I appreciate that because there's some things going on you need to understand about bigger than what you know. But you understand because you're in the orange jumpsuit you have the right to remain silent. Anything you say-

---
[1] Defendant had been detained on state warrants the previous Friday. *See* [Doc. 76 at 1-2; Doc. 76-3 at 1].
[2] SG refers to Special Agent Gordy.

JN:[3] Well, I might need a lawyer [undecipherable] because I don't know if I could- I don't know what to say. You know what I'm sayin'? I mean I wanna talk to you, I really do.

SG: Well, b-b

JN: I don't want to hurt myself.

SG: Ok, but let let let me-

JN: Do you know where I'm coming from?

SG: I do. I do. So, here. How bout this? How bout this?

JN: I've seen people say the wrong thing.

SG: I know. I know. So how bout this? You said, you said you might need a lawyer but you wanna talk to me. So how bout this?

JN: I definitely wanna talk to you.

SG: Ok. Let me explain- let me explain you rights and if I ask you anything you don't want to answer –

JN: Donut has been doing some foul shit, bro. Our kid, our kid is in his [undecipherable]

SG: But here, I didn't bring Donut. Okay? I didn't bring Donut, I didn't bring him back from Bedford County.

JN: [undecipherable] got custody, man me and her has had problems.

SG: You talking about John guy? John?

JN: [undecipherable]

SG: Yeah. So, can-can can

JN: I don't want to talk about it. I've been fearing for my life. Mother Fucker's come to my house, bro. They got up with ball bats. Ask Darla.

SG: OK

JN: They threatened to beat her with a stick, dude, in the head up there at my house that night.

---

[3] JN refers to Defendant.

SG:   OK

JN:   If she didn't talk to them. I swear to God, dude, it went way deeper than that. They've been to my house three times.

SG:   OK, well they're not here.

JN:   [undecipherable]

SG:   What?

JN:   Three times, dude.

SG:   Well, they're not here.

JN:   Them three dudes

SG:   I wanna hear Jason's side of the story.

JN:   That's the truth bro.

SG:   Can-can I finish the rights and I ask you anything you don't.

JN:   You can say it. You can say what you got to say.

SG:   Ok but here's the thing, if I ask you anything you don't wanna answer say, "I don't wanna talk about that, Gordy." It's Gordy. OK?

JN:   Mr. Gordy. Look

SG:   You have the right to- Let me, let me get through it.

JN:   Alright

SG:   You have the right to remain silent. Anything you say can and will be used against you in the court of law. You have the right to an attorney. If you cannot afford an attorney, then one will be appointed. You understand your rights?

JN:   Yes, sir.

[Doc. 76-3 at 1-3].

The Court notes that the transcript filed by the Government is not an official transcript. However, the Court finds that it reflects the general nature of the communications between

Defendant and Agent Gordy during the interview. Specific wording on some of Defendant's responses is discussed below.

## III. Discussion

The Supreme Court stated:

> [An individual] must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires. Opportunity to exercise these rights must be afforded to him throughout the interrogation. After such warnings have been given, and such opportunity afforded him, the individual may knowingly and intelligently waive these rights and agree to answer questions or make a statement.

*Miranda v. Arizona*, 384 U.S. 436, 479 (1966).

These are commonly referred to as *Miranda* warnings. The Government bears the burden of proving that "the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel." *Berghuis v. Thompkins*, 560 U.S. 370, 383 (2012) (quoting *Miranda*, 384 U.S. at 475). "Only if the totality of the circumstances surrounding the interrogation reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived." *Moran v. Burbine*, 475 U.S. 412, 421 (1986) (internal quotation omitted).

### A. Waiver of the Right to Counsel

The first question is whether there was a waiver. Here, the issue is focused on Defendant's right to counsel. Defendant claims he "promptly requested to have an attorney present when advised of his right to counsel." [Doc. 74 at 2-3]. He claims that his continued questioning by Special Agent Gordy violated his right against self-incrimination. *Id.*

After *Miranda* warnings, "[i]f the individual states that he wants an attorney, the interrogation must cease until an attorney is present." *Miranda*, 384 U.S. at 474. However, "the [individual] must unambiguously request counsel." *Davis v. United States*, 512 U.S. 452, 459 (1994). An individual must invoke the right to counsel "sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Id.* If an individual "makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel, our precedents do not require the cessation of questioning." *Id.*

According to the transcript, when Special Agent Gordy first started to give Defendant his *Miranda* warning, Defendant said, "Well, I might need a lawyer [undecipherable] because I don't know if I could—I don't know what to say. You know what I'm sayin'?" [Doc. 76-3 at 1]. However, the Court finds that it is unclear whether Defendant actually said the words, "might need." *See* Interview Video at 1:34:52; Interview Audio at 1:17.[4] Indeed, after listening to the audio and watching the video repeatedly, the Court finds that the words used by Defendant immediately prior to saying "lawyer" are unintelligible and indecipherable. So the Court cannot conclude that Defendant did say either that he "needed" or "might need" a lawyer. In the context of the conversation, however, the Court assumes that Defendant was expressing some such sentiment.

However, the totality of the circumstances also include evidence that Defendant did not make an unequivocal request for an attorney. Less than twenty seconds after Defendant may have said he needed a lawyer, Special Agent Gordy said, "You said you might need a lawyer but you wanna talk to me." Interview Video at 1:35:10; Interview Audio at 1:33. Defendant responded, "Yep." *Id.* at 1:35:12 and 1:35, respectively. The audio and video recordings reflect that Defendant

---

[4] The video and audio of the interview in question were manually filed in the Clerk's office and are in the record as Docs. 76-1 and 76-2, respectively.

continued to talk and Special Agent Gordy actually had to forcibly interrupt Defendant to give him the full *Miranda* warning. Defendant nodded in agreement as the *Miranda* warning was given. Interview Video at 1:36:22-29. When Special Agent Gordy then asked Defendant if he understood his rights, Defendant responded by nodding his head in agreement and saying something in the affirmative.[5] *Id.* at 1:36:30. Defendant gave no indication at that time that he wanted an attorney.

Further, Defendant repeatedly let Special Agent Gordy know that he wanted to talk to him. [Doc. 76-3 at 1]. Defendant did express some conflict as to whether he wanted to go ahead and talk with Special Agent Gordy in the moment without an attorney or wait and have an attorney present. In response, Special Agent Gordy offered, "OK but here's the thing, if I ask you anything you don't wanna answer say, 'I don't wanna talk about that, Gordy.'" [Doc. 76-3 at 2].

Because it is unclear whether Defendant unequivocally asked for an attorney, Defendant's subsequent interactions with Special Agent Gordy provide the strongest evidence with respect to whether he invoked his right to counsel. Based on the totality of the circumstances, the Court finds that a reasonable law enforcement officer would not have been on placed on notice that Defendant unambiguously requested an attorney. Defendant expressed that he wanted to talk and suggested he may want a lawyer, but ultimately he chose to talk to Special Agent Gordy without a lawyer present. And Defendant was told by Special Agent Gordy that he could decline to answer any of his questions. Viewed in their totality, these facts do not evince an unequivocal invocation of Defendant's right to counsel.

It is the Government's burden to prove that there was a waiver by Defendant. Though the issue here is very close, the Court finds that the Government has shown that Defendant waived his right to an attorney.

---

[5] The unofficial transcript shows that Defendant replied, "Yes, sir." Based on the Interview Video and Interview Audio recordings the Court cannot confirm that is exactly what Defendant said, but it is clear he responded in the affirmative.

B. **Voluntariness**

The second question is whether Defendant's *Miranda* waiver was voluntary. Voluntariness is determined by whether the waiver "was the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Id.* Here, there is no evidence of intimidation, coercion, or deception. To the contrary, Special Agent Gordy exhibited a pleasant and benevolent demeanor during the course of the interview. Defendant makes no argument that Special Agent Gordy employed threats, either express or implied, or otherwise coerced him to talk. The two men had a cordial interview punctuated by Defendant's repeated expressions that he wanted to talk to Special Agent Gordy. [Doc. 76-3 at 1].

On one specific topic, Defendant did say, "I don't want to talk about it. I've been fearing for my life." *Id.* at 2. Special Agent Gordy responded, "OK, well they're not here." *Id.* He also stated, "I wanna hear Jason's side of the story." *Id.* Special Agent Gordy further said, "OK but here's the thing, if I ask you anything you don't wanna answer say, 'I don't wanna talk about that, Gordy.'" *Id.* These responses show that Special Agent Gordy gave Defendant the latitude to address the topics he (Defendant) wanted to discuss and to avoid the topics he did not want to discuss.

The Court finds that the Government has met its burden to show that Defendant's *Miranda* waiver was voluntary.

C. **Comprehension**

The third question is whether Defendant "had the requisite level of comprehension." *Moran*, 475 U.S. at 421 Defendant demonstrated an understanding of his *Miranda* rights throughout his interview with Special Agent Gordy. When Special Agent Gordy first attempted to

give Defendant his *Miranda* warning, Defendant interrupted and said, "Well, I ~~might need~~[6] a lawyer [undecipherable] because I don't know if I could—I don't know what to say. You know what I'm sayin'?" [Doc. 76-3 at 1]. Defendant then said, "I don't want to hurt myself." *Id.* On the same topic of conversation he said, "I've seen people say the wrong thing." *Id.* This shows that Defendant comprehended his privilege against self-incrimination and his right to an attorney.

Defendant also demonstrated his understanding of his *Miranda* rights once Special Agent Gordy was able to give Defendant the complete *Miranda* warning. Defendant nodded affirmatively throughout the complete warning as it was being administered. Interview Video at 1:36:22-32. Then, when Special Agent Gordy asked if he understood his rights, Defendant responded affirmatively. Interview Video at 1:36:30.

The Court finds that the Government has carried its burden to show that Defendant comprehended his *Miranda* rights before he voluntarily provided information to Special Agent Gordy.

## IV. Conclusion

For the reasons stated herein, the Court finds that the Government has carried its burden to demonstrate that Defendant knowingly waived his *Miranda* rights during his interview with Special Agent Gordy. It is therefore **RECOMMENDED**[7] that Defendant's Motion to Suppress Statements [Doc. 74] be **DENIED.**

---

[6] The presence or absence of these words is discussed above in Section III.1. above. The strikethrough font here indicates that "might need" is present in the unofficial transcript cited, but the Court finds that it is unclear whether Defendant actually used these words.

[7] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified constitutes a forfeiture of the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 88 L.Ed.2d 435, 106 S. Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).

**ENTER.**

/s/ *Christopher H. Steger*
UNITED STATES MAGISTRATE JUDGE