UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

| UNITED STATES OF AMERICA | ) | Case No. 4:21-cr-14 |
|---|---|---|
| | ) | |
| v. | ) | Judge Atchley |
| | ) | |
| JASON MICHAEL NEWSOM | ) | Magistrate Judge Steger |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Jason Michael Newsom's Motion to Suppress. [Doc. 74]. Defendant seeks to exclude incriminating statements he made after allegedly invoking his right to counsel. For the reasons explained below, Defendant's motion will be **DENIED**.

I.  FACTUAL BACKGROUND

In October of 2020, law enforcement officers approached Defendant Jason Michael Newsom's home to serve a warrant for his arrest. [Doc. 76 at 1]. Following a search of Newsom and his residence, law enforcement recovered an assortment of drugs, drug paraphernalia, and ammunition. [*Id.*]. Newsom was arrested on the warrant, and while still detained, ATF Special Agent Stephen Gordy questioned him at the jail on April 19, 2021. [*Id.* at 2]. This questioning, captured on audio and video recordings, is the subject of Newsom's motion to suppress.

Along with the audio and video recordings, the Government produced an unofficial transcript of Newsom and Gordy's conversation.[1] Pertinent parts of that transcript read as follows:

Gordy:  Well, look, y-y-you wanna talk and I appreciate that because there's some things going on you need to understand about bigger than what you know. But you understand because you're in the orange jumpsuit you have the right to remain silent. Anything you say --

---

[1] The Court notes that Defendant raises no objection to the use or accuracy of the Government's unofficial transcript.

Newsom: Well, I might need a lawyer [undecipherable] because I don't know if I could -- I don't know what to say. You know what I'm sayin'? I mean I wanna talk to you, I really do.

Gordy: Well, b-b

Newsom: I don't want to hurt myself.

Gordy: Ok, but let let let me --

Newsom: Do you know where I'm coming from?

Gordy: I do. I do. So, here. How bout this? How bout this?

Newsom: I've seen people say the wrong thing.

Gordy: I know. I know. So how bout this? You said, you said you might need a lawyer but you wanna talk to me. So how bout this?

Newsom: I definitely wanna talk to you.

Gordy: Ok. Let me explain -- let me explain you rights and if I ask you anything you don't want to answer --

Newsom: Donut has been doing some foul shit, bro. Our kid, our kid is in his [undecipherable]

. . .

Gordy: Can -- can I finish the rights and I ask you anything you don't --

Newsom: You can say it. You can say what you got to say.

Gordy: Ok, but here's the thing: If I ask you anything you don't wanna answer, say, "I don't wanna talk about that, Gordy." It's Gordy, ok?

Newsom: Mr. Gordy, Look --

Gordy: You have the right to -- Let me, let me get through it.

Newsom: Alright.

Gordy: You have the right to remain silent. Anything you say can and will be used against you in a court of law. You have the right to an attorney. If you cannot afford an attorney, then one will be appointed. You understand your rights?

Newsom: Yes, sir.

2

[Doc. 76-3 at 1–3]. Following this exchange, Newsom made various incriminating statements, including that he purchased drugs in the past. He seeks to exclude these statements on grounds that they came after he clearly invoked his right to counsel, as reflected in the recordings and the transcript. Magistrate Judge Steger filed a Report and Recommendation [Doc. 84], which recommended that Defendant's motion be denied. The Court granted Defendant leave to file a late objection to the Report and Recommendation. Defendant contends that Magistrate Judge Steger erred in concluding that he waived his right to counsel. [Doc. 87-1 at 2–3]. The Government responded to the objection on December 12, 2023, [Doc. 90], and this matter is now ripe for the Court's review.

## II. STANDARD OF REVIEW

The Court is required to review any objections to a Report and Recommendation *de novo*. 28 U.S.C. § 636(b); *United States v. Quinney*, 238 F. App'x 150, 152 (6th Cir. 2007) ("It is well-settled that upon proper objection by a party, a district court must review de novo a magistrate judge's ruling on a motion to suppress."). "The Court 'may accept, reject, or modify, in whole or in part, the findings or recommendations' made by the magistrate judge." *Ciparro v. Reid*, No. 3:13-cv-314, 2013 WL 5488651, at *1 (E.D. Tenn. Sept. 30, 2013) (quoting 28 U.S.C. § 636(b)(1)).

## III. ANALYSIS

At issue is whether Newsom invoked his right to counsel or provided a voluntary, knowing, and intelligent waiver of that right. If Newsom invoked his right to counsel, the law clearly dictates that any further interrogation is impermissible. *Fare v. Michael C.*, 442 U.S. 707, 719 (1979). And statements made after one properly invokes his right to counsel are subject to suppression. *Edwards v. Arizona*, 451 U.S. 477, 486–87 (1981). This rule does not apply, however, to

individuals who effectively waive their right to counsel. *Moore v. Berghuis*, 700 F.3d 882, 887 (6th Cir. 2012) (citing *Berghuis v. Thompkins*, 560 U.S. 370, 382 (2010)). The Court therefore must determine whether Newsom invoked his right to counsel, and if not, whether he waived that right voluntarily, knowingly, and intelligently. For the reasons that follow, the Court finds that Newsom did not invoke his right to counsel but instead waived that right.

**A. Invocation of the Right to Counsel**

To invoke the right to counsel, an individual's request for an attorney must be unambiguous. *Davis v. United States*, 512 U.S. 452, 459 (1994). Ambiguous or equivocal requests for an attorney do not suffice. *Id.* Instead, the individual "must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Id.* Further interrogation is only forbidden in circumstances where the individual's request for counsel is unambiguous and reaches this level of specificity. *Id.*

Magistrate Judge Steger concluded that Defendant did not invoke his right to counsel. [Doc. 84 at 5–6]. Defendant contends that "the evidence clearly indicates a desire to have an attorney present, and that the interview should have immediately ceased." [Doc. 87-1 at 3]. On this record, the Court agrees with Magistrate Judge Steger's conclusion and overrules Defendant's objection. Defendant did not unambiguously request an attorney, as is required to invoke his right to counsel.

The Sixth Circuit confronted similar facts in *McKinney v. Hoffner*. There, after a detective told the defendant that he wanted to talk, the following exchange took place:

Defendant: Well, if you don't mind, I'd just as soon wait until I get a public defender or whatever.

Detective: Well, that's fine, but like I said . . .

Defendant: We can talk over all the other circumstances.

4

*McKinney v. Hoffner*, 830 F.3d 363, 367 (6th Cir. 2016). The Sixth Circuit was tasked with reviewing the Michigan Supreme Court's decision, which held that the defendant's two statements—that he would "just as soon wait" for an attorney but was also willing to discuss the circumstances of the case—did not constitute an unambiguous request for counsel. *Id.* at 368. The Sixth Circuit agreed and found that the state high court's decision did not involve an unreasonable application of clearly established federal law.[2] *Id.* at 373–74. Critical to the court's holding was the fact that the defendant's statements of wanting to wait for an attorney but also wanting to talk to law enforcement were separated by just two seconds, even with the detective's interjection wedged in between. *Id.* at 373. The Sixth Circuit noted that the defendant's first statement may have constituted an unambiguous request for counsel, but it cautioned that the statement "was not made in isolation." *Id.* Rather, his two statements, "only two seconds apart, said that he wanted an attorney *and* that he wanted to talk," and "a 'reasonable officer' could easily have 'understood only that [the defendant] *might* be invoking the right to counsel.'" *Id.* at 373–74 (quoting *Davis*, 512 U.S. at 459).

The facts of this case warrant the same conclusion reached in *McKinney*—namely, that Newsom did not unambiguously invoke his right to counsel. As in *McKinney*, Newsom made two statements in rapid succession, with one indicating that he wanted an attorney and the other expressing a desire to speak with Agent Gordy.[3] [Doc. 76-1 at 1:34:53–1:35:00]. Approximately

---

[2] *McKinney* involved review of a state court's decision under AEDPA, which requires the federal court to uphold the decision so long as it did not result from an unreasonable application of clearly established federal law. 830 F.3d at 369. Though this standard of review is considerably more deferential than *de novo*, *McKinney* still proves instructive given its factual similarities to this case.

[3] Magistrate Judge Steger found that it was not clear whether Newsom said he "needed" or "might need" an attorney, the latter of which was reflected in the Government's transcript. [Doc. 84 at 5]. The Court agrees that Newsom's exact wording is not clear from the video and audio, though it seems more likely that Newsom only said "need" rather than "might need." [Doc. 76-1 at 1:34:53]. Even assuming Newsom never said "might," his request for counsel is still ambiguous when considering the totality of his statement, which also indicated a desire to speak with Agent Gordy.

5

five seconds elapsed between Newsom's two statements, and they were made without any interjection from Agent Gordy. [*Id.*]. Newsom's first statement that he needed an attorney, when viewed in isolation, could certainly qualify as an unambiguous request for counsel. But the Sixth Circuit instructed in *McKinney* to not view such statements in isolation. 830 F.3d at 373. Rather, a reasonable officer, after hearing Newsom's uninterrupted statement that he both needed an attorney and wanted to talk to law enforcement, could decide that Newsom was equivocal regarding his request for counsel. *Id.* This means that Newsom failed to unambiguously invoke his right to counsel.

Newsom's subsequent conduct and statements reinforce the ambiguous nature of his request for an attorney. To be clear, the Supreme Court held in *Smith v. Illinois* "that once a suspect *clearly* invokes his right to counsel, police may not continue to question him and use his answers to cast retrospective doubt on the purported request for counsel." *England v. Hart*, 970 F.3d 698, 708 (6th Cir. 2020) (emphasis added) (citing *Smith v. Illinois*, 469 U.S. 91, 97 (1984)). "That is, we cannot retroactively glean ambiguity in a suspect's statement based on 'postrequest responses to further interrogation.'" *Id.* This prohibition only applies, however, when the individual clearly and unambiguously invokes the right to counsel in their initial request, and because Newsom failed to do so, *Smith* is inapposite. *Cornelison v. Motley*, 395 F. App'x 268, 275 (6th Cir. 2010) (explaining that *Smith* did not address situations where the initial request itself was ambiguous). Indeed, the Supreme Court even expressed in a post-*Smith* case that "when a suspect makes an ambiguous or equivocal statement it will often be good police practice for the interviewing officers to clarify whether or not he actually wants an attorney." *Davis*, 512 U.S. at 461.

Less than twenty seconds after Newsom's initial ambiguous request for an attorney, Agent Gordy engages in "good police practice" and seeks to clarify what Newsom meant with his words.

6

[Doc. 76-1 at 1:34:53–1:35:12]. Agent Gordy specifically says to Newsom "you said you might need a lawyer but you want to talk to me. So how about this?" [*Id.* at 1:35:10–13]. Newsom nods in agreement, but before Agent Gordy can finish his question, Newsom states "I definitely want to talk to you." [*Id.* at 1:35:12–14]. Now having expressed his desire to speak with Agent Gordy for a second time, Newsom's initial request for an attorney would appear all the more equivocal to a reasonable police officer. Agent Gordy then attempts to Mirandize Newsom again, only for Newsom to interrupt him again. [*Id.* at 1:35:14–22]. Specifically, Agent Gordy says to Newsom, "let me explain your rights, and if I ask you anything you don't want to answer --" [*Id.*]. Newsom proceeds to divulge information about an individual named "Donut" and expresses fear for his life. [*Id.* a 1:35:21–1:36:10]. Newsom's discussion of these matters continues for approximately fifty seconds, with minimal interjections from Agent Gordy. [*Id.*].

It is only after Newsom's nearly minute-long discussion of Donut and others that Agent Gordy is able to Mirandize Newsom. [*Id.* at 1:36:22–31]. Between Newsom's initial ambiguous request for an attorney, his subsequent expressions of a desire to speak with law enforcement, and his willingness to divulge information about Donut and others unprompted, "a 'reasonable officer' could easily have 'understood only that [Newsom] *might* be invoking the right to counsel.'" *McKinney v. Hoffner*, 830 F.3d at 373–74 (quoting *Davis*, 512 U.S. at 459). Accordingly, Newsom did not invoke his right to counsel.

### B. Waiver of the Right to Counsel

Even upon a showing that Newsom did not invoke his right to counsel, the Government still must prove that he waived the right voluntarily, knowingly, and intelligently. *Edwards*, 451 U.S. at 482 (citations omitted). Magistrate Judge Steger concluded that the Government satisfied its burden, and the Court agrees. When Agent Gordy was eventually able to provide full *Miranda*

7

warnings, Newsom nods throughout the time Agent Gordy recites them. [Doc. 76-1 at 1:36:22–29]. Agent Gordy then asks Newsom whether he understands his rights, and Newsom nods his head and mutters something, though what he says is not entirely clear from the audio and video footage. [*Id.* at 1:36:29–31]. In any event, Newsom responds affirmatively when asked whether he understands his rights. [*Id.*].

No evidence suggests that Newsom waived his right to counsel involuntarily. To demonstrate that a waiver was involuntary, there must be some element of coercion involved. *Colorado v. Spring*, 479 U.S. 564, 573–74 (1987) (citing *Oregon v. Elstad*, 470 U.S. 298, 312 (1985)). Defendant alleges no coercion, and as Magistrate Judge Steger noted, "Agent Gordy exhibited a pleasant and benevolent demeanor during the course of the interview." [Doc. 84 at 7]. The interaction between Newsom and Agent Gordy, as captured on video, plainly suggests that Newsom's waiver of his right to counsel was made voluntarily.

Newsom also waived his right to counsel knowingly and intelligently. There is no allegation that Newsom failed to understand the nature of his right to counsel. *Spring*, 479 U.S. at 575. The video evidence suggests the opposite—that Newsom comprehended the meaning and scope of his Fifth Amendment rights. As Magistrate Steger discussed, after stating that he needed an attorney but also wanted to speak with law enforcement, Newsom mentioned that he did not "want to hurt myself" and that he has "seen people say the wrong thing." [Doc. 84 at 8]. Newsom also acknowledged that he understood his rights after being fully Mirandized. [*Id.*]. Taken together, these comments and actions suggest that Newsom knowingly and intelligently waived his Fifth Amendment right to counsel.

## IV. CONCLUSION

Defendant Jason Michael Newsom did not unambiguously invoke his right to counsel. He instead waived his right voluntarily, knowingly, and intelligently. Consequently, Defendant's Objection to the Report and Recommendation [Doc. 87-1] is **OVERRULED**. Judge Steger's Report and Recommendation [Doc. 84] is **APPROVED** and **ADOPTED**. Defendant's Motion to Suppress [Doc. 74] is **DENIED**.

**SO ORDERED**.

/s/ *Charles E. Atchley, Jr.*
**CHARLES E. ATCHLEY, JR.**
**UNITED STATES DISTRICT JUDGE**